IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HEATHER HAY** | : **CIVIL ACTION NO.** 3:16-cv-229 |
| 11958 West War Dance Lane | : |
| Berlin, MD 21811 | : |
|             Plaintiff, | : **JURY TRIAL DEMANDED** |
| | : |
|       v. | : |
| | : |
| **SOMERSET AREA SCHOOL DISTRICT** | : |
| 645 South Columbia Avenue | : |
| Somerset, PA 15501 | : |
| | : |
|          Defendant. | : |

## COMPLAINT

Plaintiff Heather Hay brings this action against Somerset Area School District ("Somerset") and demands damages upon the causes of action set forth below.  In support of her Complaint, Plaintiff avers as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff Heather Hay ("Hay" or "Plaintiff") brings this action against Somerset pursuant to 42 U.S.C. § 1983 and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 to redress permanent, life-altering injuries she suffered as a result of violations of her right to be free from sexual harassment, sexual assault and a hostile educational environment based upon her gender.  At the time the sexual assaults occurred, Hay was a minor girl attending public school in Somerset County, Pennsylvania.  Hay was persistently sexually assaulted, tormented and stalked by science teacher Stephen Shaffer ("Shaffer").

2.      Somerset had knowledge of a parade of improper conduct by Shaffer, yet did nothing to prevent the harassment and assault of Hay.  After confronting Shaffer, repeatedly,

1

about improper conduct and comments to female students, Somerset did not dismiss, suspend or reprimand Shaffer in any meaningful way.  As a result, Shaffer was emboldened to continue his predatory behavior upon Hay.  The open and notorious behavior of Shaffer was known by school administrators, teachers, students and parents for years.  Yet, Somerset did nothing to stop it. The cavalier attitude of Somerset in failing to remove Shaffer, enforce policies and create policies to prevent sexual assault, allowed an environment and culture whereby Shaffer could abuse and rape Hay.

3.     In 2009, Shaffer was criminally convicted in connection with his unlawful abuse of Hay.

## PARTIES

4.     Plaintiff Heather Hay is a citizen and resident of the State of Maryland with a residence at 11958 West War Dance Lane, Berlin, MD 21811.  Hay was born on February 8, 1987.

5.     Defendant Somerset Area School District is a local government agency established and organized under the laws of the Commonwealth of Pennsylvania and a recipient of federal financial assistance.  Somerset operates the Somerset Junior and Senior High Schools, which are public schools.  Somerset is located at 645 South Columbia Avenue, Somerset PA 15501.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over subject matter of this action pursuant to 28 U.S.C. § 1331, which provides federal district courts with jurisdiction over civil actions arising under the Constitution, laws and treaties of the United States.

7.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1343, (1)(3) and (4) which provides federal district courts with jurisdiction over any civil action to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

8.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, which provides federal district courts with jurisdiction over disputes between parties deemed citizens of different states where the amount in controversy exceeds $75,000 exclusive of interests and costs.

9.    Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983.

10.    Venue is properly laid in this district pursuant to 28 U.S.C. §1891(b) because at least one defendant resides in this district and the events giving rise to the claims occurred in this district.

11.    Venue in this Court is invoked pursuant to 28 U.S.C. § 1331.

12.    This action is timely made pursuant to Pa. Con. Stat § 5533(b)(2)(I) (statute of limitations expires 12 years after minors eighteenth birthday for claims "arising from childhood sexual abuse.")

**FACTUAL BACKGROUND**

13.    In or about 2001, Hay was an eighth-grade student at Somerset Junior High School.

14.    Shaffer, who was an employee, agent or servant of defendant Somerset, was a science teacher at Somerset Junior High School since before 1991.

15.    By the time Hay reached the eighth grade, defendant Somerset had developed a

3

policy or practice of deliberate indifference to gender-based harassment and discrimination by Shaffer and Shaffer's creation of a hostile educational environment.

16.     As early as 1991, Shaffer made inappropriate comments to young female students implying sexual relief.  In or about October 1991, Somerset Area Junior High School Principal Richard Shockey became aware that Shaffer made a comment in class that girls have "relief" and then made a more specific comment directed to a female student about her having "low relief." Students in the class hearing the comment harassed the female student about having "no relief." The student complained to her counselor that she did not like the comment.  Shaffer insisted that too much was being made about the comment and that it was not serious, but he agreed to apologize to the student.  No disciplinary action was taken.  This lack of discipline, in 1991, laid the groundwork for a parade of sexual misconduct by Shaffer.  The lack of discipline, by Somerset, created a dangerous condition for the safety of students for years to come.

17.     An October 24, 1991 internal memo identifies a previous incident of "an inappropriate comment" that resulted in no "need for documentation."  As this was a "second occurrence the need for documentation exists."

18.     Months later, in May 1992, Shaffer put "thigh master" photos in an envelope with a female student's science award.  The female student's mother met with Shaffer about the incident and was dissatisfied with Shaffer's explanation and attitude.  As a result, she reported the incident to Superintendent Dennis Afton.

19.     Afton met with Shaffer and stated the incident was "not a case of sexual harassment."  Shaffer was told simply to "assure that no hint of impropriety occurs in the future." No disciplinary action was taken.  Again, in reckless disregard for the safety of students, a

4

culture was forming that emboldened Shaffer to become more and more aggressive, which proved catastrophic for Hay.

20.     Notably, Afton wrote in a draft memo that "There have been unsubstantiated reports that suggest inappropriate remarks have been made in class about females . . ." Afton wrote, "Dismissal cases have been built on less." A final memo was created that differed substantially from the "draft." The final memo that was given and discussed with Shaffer had no reference to reports of inappropriate remarks to female students.

21.     On November 8, 1996, Principal Shockey wrote a letter to Shaffer, which was placed in Shaffer's personnel file, documenting misconduct in failing to supervise his classroom, failing to have a professional attitude, failing to maintain professional relationships with peers, failing to timely appear for meetings and failing to meet deadlines for written reports regarding students. Principal Shockey developed a detailed remediation plan, which required Shaffer to take concrete and monitored steps to improve his performance. Shaffer's classroom had significant damage indicating lack of supervision. Each Friday, Shaffer submitted to a weekly inspection of his classroom and had to "position [himself] at the corner of the hallway and [] classroom doorway "as the inspection took place." Shaffer was also issued an "unsatisfactory rating."

22.     In or about 2000, Hay met Shaffer at a junior high school dance while she was in the seventh grade. He sang a "Chiquita banana song" and did a dance for Hay and her friends.

23.     Following the dance, Shaffer would appear at Hay's soccer games held on the fields at the school.

24.     Even though Shaffer was not her teacher, Shaffer placed a box in his classroom

and directed Hay to keep her school books in his classroom so she did not have to go to her
locker.  He also arranged for a similar arrangement for another female student and friend of
Hay's.  Because her books were in his classroom, Hay was present in Shaffer's classroom
several times each school day.

  25. When Hay would go to Shaffer's classroom to retrieve her school books, Shaffer
would insist that Hay give him a kiss.  If she refused, he would become enraged, get red in the
face and turn into a "monster."  Shaffer would also touch Hay inappropriately in his classroom.

  26. At Shaffer's direction, Hay sat in classes in which she was not enrolled, but taught
by Shaffer.  These classes, about the planetarium, were held in a dark and windowless room.
Shaffer touched Hay inappropriately on her legs and genital area during the class.

  27. Shaffer often requested Hay babysit his children.  In or about 2001, Shaffer
exposed himself to Hay and attempted to coerce her to touch his penis while in his van.  Hay was
frightened and panicked.  In an effort to scare and distract Shaffer, Hay told Shaffer that her
mother would be looking for her.

  28. In or about 2001, at the age of 14, Hay was invited to the Shaffer home to watch
movies in the basement with Shaffer's children.  Shaffer's children became tired and went
upstairs.  Shaffer told Hay to sleep on the couch.  A few moments later, Shaffer came back
downstairs and forced himself upon Hay.  Hay told him to stop, but Shaffer insisted "oh, you'll
love it, I know you're going to like it."  Hay cried and went to the bathroom bleeding from her
vagina.  This was a scary and painful experience for Hay, both physically and emotionally,
particularly given that she had repeatedly told Shaffer that she planned to wait until she was
married to engage in sexual intercourse.

29.     After the rape, Hay expressed concern of pregnancy.  Shaffer claimed he was sterile.  In a brazen act, demonstrating the open and notorious behavior of Shaffer, he attempted to allay Hay's concerns regarding sex and pregnancy by masturbating, during school hours, in the science classroom and placing the semen on a microscope slide to support his claim he was sterile.  He offered the slide for Hay's examination.

30.     Shaffer contacted Hay via the internet, at times pretending to be Shaffer's daughter, and instructed Hay to come to his house at times when his wife was not at home, often under the auspices of babysitting the Shaffer children.

31.     Shaffer told Hay that only three things mattered to him in life: (1) his kids; (2) his job; and (3) her.  Shaffer told Hay that if she told anyone that he was abusing her he would lose all three things and then he would have nothing to live for.  Hay lived in fear that Shaffer would commit suicide if Shaffer's misconduct was discovered.

32.     Shaffer instructed Hay to stay away from male classmates and would express jealous anger at Hay when he saw her associating with male classmates.

33.     Shaffer constantly told Hay that he loved her and that they would get married someday.  Hay remained afraid that if she ceased contact or reported the abuse, Shaffer would commit suicide.  She was also embarrassed and ashamed.

34.     On multiple occasions, Shaffer took Hay skiing and would kiss her on the chair lifts.

35.     Shaffer learned Hay's routine and would stalk her at school-sponsored sporting events.

36.     Shaffer would harass Hay through letters and electronic messages, some of which Hay kept and others of which Shaffer required her to burn after reading.  In these communications, Shaffer would tell Hay that he loves, needs, wants and misses her.  Shaffer told Hay that he loves her more than "anybody ever will."  In addition, Shaffer would express anger and jealousy at Hay's refusal to prioritize and totally devote herself to him.  Shaffer insisted that he know "EVERY detail of [Heather's] life."  Shaffer would instruct her to see him and to tell him she loves him.  Shaffer noted on multiple occasions his displeasure at Hay's efforts to avoid him.  Shaffer would also discuss sexually assaulting her, including having her as his "lover."  At times, he would sign the letters "RLJ," which stood for "Romeo loves Juliet."

37.     Shaffer spray-painted "RLJ" on a bridge in the community as well as on a road near Hay's home and even on a soccer goal post at the school.

38.     At a 2001 cheerleading car-wash fundraiser, Shaffer interacted with Hay inappropriately by spraying water on her, and her alone.  Cheerleading coach, Leanne Heiple, stated that Shaffer was acting "like a teenager in love" with Hay at the carwash and that Shaffer was "acting inappropriately."

39.     Heiple also stated that female students were heard stating that Shaffer would give them As "for grades if they wore low cut tops and short skirts."

40.     In or around 2001, a foreign language teacher recognized that Hay would repeatedly come to class late with passes signed "late to class" by Shaffer.

41.     The foreign language teacher also stated there was no policy in place at Somerset to report suspected sexual abuse.  The teacher also stated Somerset did not dismiss Shaffer sooner, with all the rumors, because Somerset had a culture of "just not wanting to know."

8

42.     In or around 2001, health teacher, Ellie Hancock shared a room with Shaffer. Hancock used mannequins with chest plates.  Shaffer grabbed the mannequin's chest and said to the class "these aren't quite as big as Mrs. Hancock's."

43.     Similar to the foreign language teacher, Hancock stated Somerset did not remove Shaffer sooner because the school "does not air dirty laundry."

44.     When Hay was in 9th grade (2001-2002) she carried her books from class to class to avoid going to the box in Shaffer's classroom.

45.     In February 2002, Shaffer made a birthday cake and threw a surprise party in his classroom for Hay's 15th birthday.

46.     Concerns were raised by parents that an athletic coach may have approached and flirted with Hay.  Upon approaching the Coach, he said, "I am not the one you should be worrying about.  Steve S is always following her around, watches her at the track, etc."  Thus, even other teachers at the school were aware of the inappropriate conduct by Shaffer.

47.     Principal Tina Burns, who followed Richard Shockey as principal, stated that during the 2001-2002 school year, "rumors were flying" about Shaffer and Hay having an "inappropriate relationship" and the school was pressured to do something.  Burns reported that other teachers, parents, and coaches are coming to her to get this resolved.

48.     In the spring of 2002, Principal Burns and Superintendent John Baraniak met with Shaffer about rumors of an inappropriate relationship with Hay.  Shaffer assured them that nothing was "going on" with Hay.  Nevertheless, Burns tells Shaffer no girls are to come to his room for "prep" or "paperwork, bulletin boards, etc." Burns said, "stop it."  After confronting Shaffer, the cavalier attitude of Somerset persisted as Shaffer faced no suspension or termination.

9

Rather than fire Shaffer, Somerset allowed his deplorable conduct to continue in reckless disregard for the safety of students, including Hay.

49. Shaffer continued to write letters to Hay and stated "There's a very good chance I could get fired and possibly go to jail just from having you stop to see me."

50. Shaffer also wrote a love poem that starts "We face each other, just feet apart, I gaze into your eyes, no word is spoken, but love pours out."

51. In the fall of 2002, Hay starts 10th grade in the attached high school building. Hay's locker is close to Shaffer's classroom in the junior high school building. Shaffer leaves several notes in her locker.

52. In September 2002, Cindy Shaffer files for divorce. Shaffer writes a letter to Hay and mentions the divorce and states that his wife "is blackmailing me in our settlement and has told several people about us to ruin my reputation." Thus, the community at large was aware of the inappropriate teacher-student relationship. Yet, in conscious disregard for Hay's safety and well-being, nothing was done by Somerset to stop it.

53. Shaffer begged Hay to be what he needs-someone totally devoted to him. A letter from this time period stated "I realize my love for you is a forbidden love but it is also a very true love. I care for you in so many ways."

54. In November and December of 2002, Shaffer sent many love letters to Hay. He worried about whether Hay dated other people. "I need to know where I stand. Do you really want to be with me and me alone once you're 18. I can't let go. I feel like we're more than just a fling. I am sooo connected to you!"

55. As a result of the culture and environment that Somerset created, Hay withdrew

from her normal activities.  Hay suffered from depression and a severe eating disorder as a result of the abuse she suffered.  Ultimately, she was removed from the track team because of her deteriorating condition, which included extreme weight loss.  She began sleeping with her parents again during the period of abuse.

56.    Hay's withdrawal from her normal activities continued as she went from Student Council President and track captain with an A-grade point average to little to no participation in extra-curricular activities and very poor grades.

57.    On several occasions, Hay contemplated suicide by jumping off a bridge.

58.    Ultimately, with her extreme weight-loss, Hay's mother sent her to Pittsburgh for treatment.  Hay remained fearful and kept silent about the abuse.

59.    A January 2003 note by Hay's family practice CNP, Terry Tallman, stated that Hay is anorexic and has been since November 2002.  Hay admitted that she now is depressed.

60.    A February 2003 note stated that Hay has been referred to Western Psychiatric Institute and Clinic ("Western Psych") for a partial hospitalization.  Anti-depressants and weight monitoring were suggested.  Between October 2002 and March 2003, Hay's weight dropped from 113 pounds to 85 pounds.

61.    In a March 2003 note, a practitioner stated she was approached about Hay's condition by the head of student assistance at Somerset, multiple community members and the school nurse.  At 85 pounds, Hay met the criteria for entry to Western Psych and she and her parents agreed that she should be admitted to inpatient treatment.

62.    Hay received inpatient treatment for anorexia at Western Psych from March 14 through April 21, 2003.

11

63.     On March 28, 2003, a social worker with Western Psych spoke with Shelley Hay (Hay's mother) and noted that "mother reports that situation has arisen at home" regarding an affair Hay had with a teacher.  Mother found a note and the relationship ended.  The eating disorder started about this time.  Now "school wants to bring affair to public eye."  Member of school board wants to speak with Hay about the nature of the relationship.  Shelly Hay says this is the only time a school administrator contacted her.

64.     Western Psych staff member Dorothy Sites called Principle Tina Burns on April 1, 2003.  Ms. Burns explained that in the last school year (2001-2002) rumors about Hay and Shaffer were flying in the community.  The school is being pressured to "do something."  Ms. Burns said that other teachers, parents and coaches were coming to her to get this resolved.  She states that there have been reports that Hay is still seeing Shaffer during school hours.

65.     On April 14, 2003, Dorothy Sites, of Western Psych, documents a communication she had with Tina Burns regarding an "inappropriate relationship with a teacher."  Burns was told to contact a child welfare hotline and report the inappropriate behavior between Shaffer and Hay.  Burns alleges she "called Child Welfare and made the report.  The counselor there said I had to call my local police department.  I contacted Cliff from Somerset Police and made the report.  [] He said he would take care of it."  There is no evidence this call occurred.

66.     On April 21, 2003, Hay was discharged from her inpatient stay to a partial program and started back to school a week later.

67.     Shaffer continued to harass and stalk Hay after she returned from Western Psych.

68.     In or around April 2003, shortly after re-enrollment, Shaffer stated, "The morning I was in guidance and saw you reenroll was sooo wonderful." "You do look better, but not very

happy."  "I need you to let me know what I can do to remedy this problem.  I will never abandon you, but I can't help thinking maybe I'm making things worse."

69.     In the fall of 2003, Burns was no longer the Principal, but was contacted by a few Somerset teachers to say that Shaffer was "starting again." "Hay was working at a restaurant and [Shaffer] was there all the time."

70.     In the fall of 2003, Shaffer wrote that he loved Hay and that "the way the school year ended, I thought you had given up on me.  There are so many things to talk about."  He was happy she was gaining weight, and stated "I want to be part of your cure, not part of your problem."

71.     In March 2004, a complaint was made to Principal Jeff Boyer that Shaffer touched a female student "on the butt."

72.     In June 2004, male students complained that Shaffer treats boys unfairly and treats girls special.

73.     In or around June 2004 multiple students document, in writing, the following:

     a)     Shaffer puts his hand down a girl's shirt;

     b)     he "touches a lot of girls' butts;"

     c)     "he drops pencils and looks up girls skirts;"

     d)     "he is harassing girls;"

     e)     "Looks up [girls] skirts while walking around the room and when they are sitting down;"

     f)     "he rubs girls shoulders and backs;"

     g)     "flirts with girls;"

     h)     When explaining kidneys, he always uses a girl as an example and

"always touches their lower back;"

    i)     he plays with girls hair;

    j)     has all female student names under his desk;

    k)    lets female students keep their clothes and personal belongings in his room;

    l)     "touches girls;"

    m)   "I wore a skirt to school and he cut the strings off the back;"

    n)    "he invites only girls to study hall;" and

    o)    "he puts his arm around you and tries to put it in other places."

74.    Shaffer's conduct was outrageous, open and notorious, such that his pattern of behavior was known by administration, teachers and students.

75.    On June 28, 2004, a letter summary is prepared documenting a meeting with Shaffer, Dr. Baraniak (Superintendent), Principal Jeff Boyer and union representative Barbara Lynch.  They discussed complaints of sexual harassment from four female students.  A behavior plan was issued.  Thereafter, no students were permitted in the classroom alone with Shaffer, and he was not to touch a student.

76.    During the summer of 2004, parents called to complain about Shaffer, saying that there have been rumors about him for years.

77.    On August 30, 2004, Superintendent Baraniak sent Shaffer a letter that there are allegations he sexually harassed "four (4) female junior high school students, and possibly others."  "I informed you that I continue to hear reports, and I understand there are widespread rumors in the community, concerning allegations of a relationship you may have had with a female student, perhaps of a physical nature, or at least "over the internet.[ ]  You are cautioned

14

that any conduct of the nature of which you have been accused could well lead to criminal prosecutions or civil lawsuits. . . ."  Shaffer was given a three day suspension and directives not be alone with any students.  The letter noted that "**such allegations are deeply troubling to me as they raise fears of liability for you and the school district…**"

78.     In a September 1, 2004 letter from Superintendent Baraniak to Solicitor William Carroll, Baraniak summarized the school district's response to the complaints against Shaffer. Baraniak noted that he met with Shaffer by reviewing, in detail, "the essence of many rumors, innuendos, allegations and hearsay that have been directed towards Shaffer during the past several years."  He also stated that Shaffer did not comment on the "allegations concerning the incident with Hay."

79.     On February 18, 2005, the PA Department of Education sent a notice to Somerset regarding a professional disciplinary complaint against Shaffer.

80.     On March 3, 2005, Superintendent Baraniak responds to the PA Department of Education and states that during the past several years he heard rumors concerning allegations that Shaffer had a relationship with a female student (Hay) both physical and over the internet.

81.     On May 16, 2005, the PA Department of Education states the allegations of an inappropriate relationship with a student (Hay) constitute probable cause for disciplinary action.

82.     October 25, 2005, Shaffer receives a retirement notice effective December 22, 2005.

83.     On October 26, 2005, Cynthia Shaffer, writes a letter to John Coleman, President of the Somerset Area School Board and states:

> Please let this letter be record that there is and has been sustainable
> evidence to support the concerns [of sexual misconduct], however,

15

> the district was not willing to provide the appropriate venue for the
> release of this information.  The interpretation of the school
> board's legal counsel, that securing the appropriate information
> regarding the victimization of a twelve year student, was not
> sound.  It is my understanding that this was a discretionary call that
> could and should have occurred immediately upon communication
> by a concerned parent.  It is a shame that the legalities and the
> system have provided a protection mechanism for predators to
> remain in the school and that twelve year old victims of this type
> of behavior continue to be victimized throughout their education
> process 'on your watch.'  I also want to make clear that this is not
> one individual and an isolated instance I am talking about. [] The
> Superintendent of Somerset did not follow the appropriate
> procedure ... and should be held accountable for his lack of action.

84.     On September 29, 2006, Cindy Shaffer writes an e-mail to Dr. David Pastrick

regarding the Somerset School District and states: "Even when I did have documented proof, the

school did not want it.  My point is your school system has a lengthy track record of allowing

such activity without consequence and students have suffered. []  Had the previous

superintendent followed the appropriate procedure, one telephone call and one meeting would

have precipitated the necessary actions to have the teacher [Shaffer] removed from the classroom

and protected additional abuse."

84.     On October 2, 2006, Cindy Shaffer writes an e-mail to Karen Addleman and

states: "Clearly your superintendent was reckless in performing his duties and misrepresented the

truth as to what had been done to protect the student body and specifically the victim . . . ."

85.     On October 4, 2006, Cindy Shaffer writes John Coleman and states: "I made

numerous calls to Dr. B indicating that I had documented evidence of physical contact with the

student.  I also indicated that I would provide as much of this information as was necessary to

have him removed from the classroom and the potential risk to other students.  Understandably, I

did not want to create circumstances where I would have to go public with this.  He telephoned

me back on several occasions asking for more time to observe the situation."

86.     On January 12, 2008, Hay meets with police detective Ruth Beckner.

87.     On January 25, 2010, Shaffer is convicted of: (1) corruption of a minor; (2) endangering the welfare of a child; and (3) indecent assault.  The aggregate sentencing was up to 7 years, to be followed by supervised probation for a period of 3 years.

88.     Somerset failed to take reasonable steps to protect minor girls, including Hay, from Shaffer's sexual misconduct even though their highest level of officials knew or should have known about the danger he posed to children.

89.     Despite the extraordinary and unreasonable risk of harm to minor girls posed by Shaffer, Somerset provided Shaffer continuous access to minor girls through their facilities.

90.     Although Somerset was aware of the inappropriate conduct of Shaffer since 1991, he was allowed to continue teaching at the school.

91.     As a result of the childhood sexual abuse to which Hay was subjected by Shaffer and the failure of Somerset to take reasonable steps to protect Hay from that abuse, Hay has suffered and will continue to suffer from severe emotional, psychological, physical and financial harm, including, but not limited to, pain, mental anguish, anxiety, humiliation, loss of self-esteem, loss of enjoyment of life, fear, loss of earnings and earning capacity.  Hay has also incurred and will continue to incur expenses related to her losses and harm, including, but not limited to, expenses for medical care and therapy.

92.     The conduct of Defendant was and continues to be a substantial factor in bringing about the severe and permanent harm suffered by Hay.

93.     The conduct of Defendant was wanton and outrageous and demonstrates a

reckless indifference to the rights of others, including Hay.

**COUNT I**
**PLAINTIFF vs. SOMERSET**
**CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. §1983**

94.     The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

95.     Under the Fourteenth Amendment, Plaintiff had a right to bodily integrity, which was violated by Shaffer's inappropriate sexual contact, groping, molesting and grooming and Somerset's lack of action to prevent it.  There existed in the Somerset Area School District, a custom, practice and/or policy of deliberate indifference to sexual abuse of students and/or active concealment of instances of known or suspected sexual abuse of students.

96.     This custom, practice and/or policy of deliberate indifference was established and maintained by the administrative personnel of Somerset, through their knowing acquiescence and toleration of misconduct on the part of school personnel and the failure to take action to stop such conduct and/or train personnel to avoid such instances of misconduct.

97.     This custom, practice and/or policy existed for a significant period of time prior to the sexual assaults upon Plaintiff.

98.     The customs, practices and/or policies of Somerset consisted of the following:

    a      Deliberate indifference of the misconduct and constitutional deprivations perpetrated by its subordinate, agent and employee, Shaffer;

    b.     Failing to properly and timely investigate Shaffer's relationship with Hay;

    c.     Failing to adequately supervise Shaffer and Hay's relationship;

    d.     Failing to remedy Shaffer's misconduct with regard to Hay;

18

e.  Deliberate indifference to the constitutional rights of students in the Somerset Area School District, including Hay;

f.  Deliberate indifference to the need for training and supervision of teachers, such as Shaffer, with respect to impermissible conduct and contact with students;

g.  Permitting Shaffer to remain in charge of teaching activities, despite knowledge that Shaffer presented a significant threat to the health, safety and welfare students, including Hay;

h.  Failing to timely investigate or take any proper disciplinary action against Shaffer, who Somerset knew posed a significant threat to the health, safety and welfare of students, including Hay;

i.  Failing to maintain a resource officer that would provide an outlet to Hay and other students to prevent such incidents from happening;

j.  Failing to timely and properly investigate and institute disciplinary action against Shaffer, who Somerset knew posed a significant threat to the health, safety and welfare of students, including Hay;

k.  Failing to monitor Shaffer's activities despite actual knowledge that he posed a significant threat to students, including Hay;

l.  Failing to take timely steps to prevent contact by Shaffer with Hay after actual notice of improprieties;

m.  Failing to take timely steps to prevent contact by Shaffer with Hay after Somerset knew or should have known of inappropriate misconduct, communication and interactions between Shaffer and Hay;

n.  Failing to adopt, implement and/or follow proper polices and procedure to ensure identification and reporting of sexual abuse of students by teachers;

o.  Permitting Shaffer to have unmonitored access to female minor-students;

p.  Failing to investigate reports of prior sexual abuse by Shaffer;

q.  Failing to adequately supervise Shaffer on Somerset's property;

r.  Failing to take proper security measures;

s.  Failing to adequately control interaction between students and staff;

      t.      Failing to provide for the safety and protection of Hay;

      u.      Providing Shaffer with ready access to young females when Somerset knew or should have known of Shaffer's history of sexual abuse and exploitation of students; and

      v.      Failure to implement policies or procedures regarding sexual abuse.

99.    Somerset, through its decision-makers and policy-makers, including Superintendents Afton and Baraniak, implemented a plan, policy, or custom at Somerset that made it clear that the relationship between Shaffer and Hay would not be investigated and would be tolerated.

100.    To the extent there was a plan, policy, practice, or custom of Somerset to investigate, discourage, prevent, or punish such instances of conduct, Somerset, through its decision makers made a conscious and deliberate determination not to enforce such policy or plan after receiving notification of the instances of improper, inappropriate, and unprofessional contact between, or conduct by, Shaffer and Hay as set forth in the preceding paragraphs.

101.    Alternatively, Somerset had no plan, policy, or practice in place to investigate sexual misconduct between a teacher and student.

102.    The actions of Somerset, through its decision-makers and policy-makers, including Superintendents Afton and Baraniak in failing to investigate and/or improperly investigating Shaffer's conduct and failing and/or refusing to immediately notify law enforcement and/or failing to initiate effective remedial action was undertaken pursuant to a policy, plan, custom, or practice of not pursuing or investigating this situation and, thereby, acquiescing in instances of improper, inappropriate, and unprofessional contacts by teacher-employees with students, or in the alternative, said action was undertaken pursuant to a

conscious and deliberate plan or policy to accord preferential treatment to Shaffer.

103.    At all material times, Somerset acted under color of state law and the

School District acted through its administration, school board members and other agents,

servants and employees.

104.    The deliberately indifferent customs, practices and/or policies of Somerset, as set

forth above, created a climate in which Shaffer could prey upon Hay with impunity.

105.    As a direct and proximate result of the aforesaid customs, practices, and/or

policies of Somerset, Hay was deprived of her rights, privileges and immunities secured by the

constitution or laws of the United States, specifically her liberty interest in personal bodily

integrity and freedom from sexual assault and abuse guaranteed under the Fourteenth

Amendment to the United States Constitution.

106.    As a result of the customs, practices and/or policies of Somerset, Hay has suffered

in the past, and will continue to suffer in the future, from severe mental anguish, embarrassment,

humiliation and emotional and physical distress.

**WHEREFORE,** Plaintiff seeks damages, against Defendant, in an amount in excess of

$75,000, including costs of suit, interest and attorney's fees and such other relief as this

Honorable Court deems appropriate.

## COUNT II
## PLAINTIFF vs. SOMERSET
## VIOLATION OF TITLE IX, 20 U.S.C.§ 1681

107.    The preceding paragraphs of this Complaint are incorporated as though fully set

forth herein.

108.    Hay, on the basis of her sex, was denied benefits and/or subjected to

discrimination under an education program or activity receiving federal funding.

109.    The sex-based harassment was so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to educational opportunities or benefits provided by the school.

110.    Somerset created and/or subjected Hay to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), because: a) Plaintiff was a member of a protected class; b) she was subjected to sexual harassment in the form of a sexual assault and sexual harassment by a teacher; c) she was subjected to harassment based on her sex; and d) she was subjected to a hostile educational environment created by Somerset's lack of policies and procedures and/or failure to properly investigate and/or address the sexual assault and subsequent harassment.

111.     Somerset and its officials had actual knowledge of Shaffer's sexual misconduct and the resulting harassment of Hay.

112.    Hay was further denied benefits and/or subjected to discrimination under an education program or activity receiving federal funding due to Somerset's failure to investigate and discipline Shaffer in a timely manner, after having knowledge of Shaffer's sexual misconduct and harassment of Hay.

113.    Somerset's failure to promptly and appropriately respond to the sexual misconduct resulted in Hay, on the basis of her sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in Somerset's education program in violation of Title IX.

114.    Somerset failed to take immediate, effective remedial steps to resolve the complaints of sexual harassment and instead acted with deliberate indifference toward Hay.

115.    Somerset persisted in its actions and inaction even after it had actual knowledge of the harm suffered by Hay.

116.    Somerset engaged in a pattern and practice of behavior designed to discourage and dissuade students who had been sexually assaulted, from seeking protection and prosecution of sexual assaults.

117.    Further, Somerset engaged in a pattern and practice of behavior designed to dissuade teachers from reporting suspected misconduct, including, but not limited to, their failure to promulgate a sexual harassment policy.

118.    This policy and/or practice constituted disparate treatment of females and had a disparate impact on female students, including Hay.

119.    Somerset had actual notice of the relationship involving Shaffer and Hay and had an opportunity to rectify the violation/discrimination, but failed to do so.

120.    Somerset had actual notice of the violation and was deliberately indifferent to the discrimination.

121.    Hay was subjected to a sexually hostile educational environment.

122.    At all material times Somerset acted under color of state law and the School District acted through its administration, school board members and other agents, servants and employees.

123.    Somerset had actual notice of the harassment and hostile environment, but were deliberately indifferent to the harassment and hostile environment.

124.    As a result of the customs, practices and/or policies and/or lack thereof of Somerset, Hay has suffered in the past, and will continue to suffer in the future, from severe

mental anguish, embarrassment, humiliation and emotional and physical distress.

125.    Based upon the foregoing violations of Title IX of the Education Amendments of 1972, 20 U.S.C.§1681, et. seq., Hay has suffered in the past, and will continue to suffer in the future, from severe mental anguish, embarrassment, humiliation and emotional and physical distress.

**WHEREFORE**, Plaintiff seeks damages, against Defendant, in an amount in excess of $75,000, including costs of suit, interest, attorney's fees and such other relief as this Honorable Court deems appropriate.

<b>ROSS FELLER CASEY, LLP</b>

By:    */s/ Joel J. Feller*_____
        JOEL J. FELLER, ESQUIRE - PA 68873
        GREGORY N. HAROUTOUNIAN, ESQUIRE - PA 207338
        Motion for *Pro Hac Vice* Admission
        1650 Market Street, Suite 3450
        Philadelphia, PA 19103
        (215)574-2000
        (215)574-3080
        Jfeller@rossfellercasey.com
        Gharouto@rossfellercasey.com
        *Attorneys for Plaintiff*

Dated: November 1, 2016